UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-00059-AGF |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Timothy Wiley was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., or supplemental security income under Title XVI of the Act, 42 §§ 1381, et seq. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on June 30, 1965, filed applications for disability benefits and supplemental security income on December 27, 2011, alleging a disability onset date of December 23, 2011, due to back, neck, and heart problems; neuropathy; and

depression.[1]  After Plaintiff's applications were denied at the initial administrative level, he requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 9, 2013, at which Plaintiff and a Vocational Expert ("VE") testified.  By decision dated October 29, 2013, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with some limitations, and that Plaintiff was not disabled, based upon the testimony of the VE that there were jobs that an individual such as Plaintiff could perform.  Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on February 18, 2015.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record as a whole.  Specifically, Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective complaints of pain and gave insufficient weight to the opinion of Plaintiff's treating neurosurgeon, Sonjay Joseph Fonn, D.O.

**Work History and Application Forms**

Plaintiff represented on his application forms that he worked from 1993 to 2011, primarily in the heating and cooling business, as an inspector (1993-1998), service man (1999-2000), installer (2002-2005), and service manager (2006-2011).  He indicated that he stopped working on December 23, 2011 because of his conditions.  (Tr. 321-35.)

---

[1]  As Plaintiff's legal arguments relate primarily to his back problems and neuropathy, this Memorandum and Order does not discuss Plaintiff's other impairments or the ALJ's findings with respect thereto.

On a Function Report dated December 30, 2011, Plaintiff described his typical daily activities, including personal care; cooking meals; doing housework such as cleaning, laundry, and washing dishes; shopping for two hours weekly; golfing once a month; hunting once a week; and fishing. He reported that his condition affected various abilities, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and concentration. (Tr. 307-20.)

**Medical Records**

Prior to his alleged disability onset date (December 23, 2011), Plaintiff had several back surgeries in 2009, 2010, and early 2011. These surgeries involved fusion operations and the removal and reinstallation of hardware. (Tr. 377, 426, 561-62.)

On August 3, 2011, in a post-operative visit after his last surgery, Dr. Fonn noted that Plaintiff was progressing well, his symptoms had improved, and a CT scan showed good fusion. Dr. Fonn advised Plaintiff to follow up with him after attending physical therapy. (Tr. 442.) The record does not contain evidence that Plaintiff attended physical therapy, and he did not return to treatment with Dr. Fonn until March 2012, when he reported a recurrence of his symptoms, including mid-shoulder pain, not sleeping well, and worsening numbness in his lower extremities. Dr. Fonn scheduled Plaintiff for a spinal cord stimulation trial. (Tr. 573.)

On June 14, 2012, Plaintiff had a spinal cord stimulator placed in his back.[2] Plaintiff reported good symptom relief in his upper back, but reported that the stimulator

---

[2] Plaintiff reported poor relief of pain after an initial spinal cord stimulation trial, which Dr. Fonn ascribed to Plaintiff's weight and a failure to achieve optimum

3

provided little coverage of his lower back.  Dr. Fonn reported that Plaintiff received reasonable coverage from the stimulator given his size.  (Tr. 575-77.)  On October 24, 2012, Plaintiff reported getting reasonable coverage from his stimulator but said that he continued to have symptoms in his neck.  Dr. Fonn recommended a CT myelogram and a functional capacity evaluation.  (Tr. 622.)

On November 6, 2012, Plaintiff completed a functional capacity evaluation.  The functional capacity evaluation showed the following.  Plaintiff was able to perform all tasks except kneeling down on one knee.  He displayed a normal gait, independent transfers and transitions, and full balance.  He could frequently sit, stand, climb, bend, reach, squad, and twist, and occasionally walk and crawl.  Plaintiff was unable to walk for prolonged or extended periods of time due to self-limiting pain and feelings of his legs giving way.  Plaintiff could perform some material handling tasks at the heavy and medium level, and could occasionally lift 60 pounds and carry 70 pounds, frequently lift 30 pounds and carry 35 pounds, occasionally push 125 pounds and pull 136 pounds, and frequently push and pull 30 pounds.  (Tr. 585.)

The functional capacity evaluation also showed that Plaintiff failed two out of eight validity criteria, which were used to determine whether Plaintiff displayed symptom exaggeration.  The two criteria Plaintiff failed were his perceived disability score and his modified somatic score.  Plaintiff's perceived disability score indicated that Plaintiff's perception of himself as crippled did not correlate with his physical functional

---

positioning of the device.  Plaintiff began his second spinal cord stimulator trial on June 14, 2012.  (Tr. 574-75.)

capabilities. Plaintiff's modified somatic score indicated possible hypochondriasis.[3] (Tr. 585-86.) The evaluator stated that despite these findings, Plaintiff appeared to give maximum effort during testing procedures and also displayed physical signs of good effort during testing. (Tr. 585.)

Dr. Fonn relied on the functional capacity evaluation to complete a medical source statement for Plaintiff on November 19, 2012. Dr. Fonn wrote that his diagnosis of Plaintiff was a lumbar herniated nucleus pulposus without myelopathy; facet arthropathy; lumbar disc degeneration; lumbar discogenic pain; thoracic radiculopathy; sciatica; lumbago; cervical radiculopathy; and peripheral neuropathy. Dr. Fonn checked "yes" as to whether imaging studies documented compromise of Plaintiff's nerve root or spinal cord, and exams documented pain and limited range of motion. (Tr. 579.) Dr. Fonn indicated that Plaintiff was not limited in sitting or standing, that he could walk occasionally, and that he could lift and/or carry 30 pounds, and frequently bend, twist, reach, climb, balance, use upper and lower extremities, work around moving machinery, and drive. (Tr. 581-82.)

Dr. Fonn indicated that he had "not tested" whether Plaintiff was capable of sustaining a 40-hour workweek. Dr. Fonn checked "yes" as to whether Plaintiff needed to be able to shift positions at will and sometimes needed to take unscheduled breaks during an eight-hour work day, but Dr. Fonn wrote that it was "unknown" how often Plaintiff would need to take breaks or for how long. Dr. Fonn further indicated that

---

[3] The functional capacity evaluation stated that a modified somatic score of greater than or equal to six was considered high and indicated possible hypochondriasis; Plaintiff scored a nine.

Plaintiff would likely be absent from work about once a month due to his impairments, but he wrote that this was "subject to change." (Tr. 584.) Dr. Fonn also wrote that Plaintiff's prognosis was "good." (Tr. 580.)

On November 29, 2012, during a cardiology appointment for chest pain, Plaintiff's back was reported to be non-tender. (Tr. 609-09.)

Plaintiff saw Dr. Fonn again on March 20, 2013, at which time Plaintiff's physical examination was essentially normal. Plaintiff stated that he was unable to afford a CT myelogram for his neck pain but that he wished to try a course of physical therapy, which Dr. Fonn recommended. (Tr. 625.)

Plaintiff did not return to Dr. Fonn until August 7, 2013, at which time his physical examination was still normal. Plaintiff still had not started physical therapy at this time. Plaintiff reported to Dr. Fonn that he was doing well with the spinal cord stimulator but that he still only had high coverage. Dr. Fonn told Plaintiff they could consider repositioning the stimulator after trying a course of physical therapy. (Tr. at 71.)

**Evidentiary Hearing of October 9, 2013 (Tr. 97-124)**

    1.    **Plaintiff's testimony (Tr. 102-19)**

At the October 9, 2013 evidentiary hearing in this matter, Plaintiff testified to experiencing pain in his lower back and weakness and numbness in his legs. Plaintiff testified that he spent about four hours a day sitting in a recliner with his feet elevated and that his pain limited his ability to walk for more than 20 minutes at a time, stand or sit for more than 10 to 15 minutes, lift 20 pounds repetitively, drive long distances, or

6

sleep regularly. Plaintiff testified that he drove 70 miles to attend the hearing but that driving was painful.

Plaintiff also testified that his impairments caused him to stop bowling, to decrease golfing to only once or twice since his first surgery, and to decrease hunting and fishing to one day a week, for approximately three to four hours. He testified that he is no longer able to climb trees to hunt, but that, instead, he rides a four-wheeler and sits in a "blind" while hunting. He testified that when is in the blind, he has to alternate between sitting and standing because of the pain. Plaintiff also testified that, whereas he used to be able to fish all day in a boat, he is now able to fish for only two to three hours at a time but that he is able to rod, reel, haul in, and net fish, including bass.

Plaintiff testified that he walks his 20-pound dog for about 15 minutes a day, visits his brother, goes grocery shopping, and occasionally goes to church.

### 2. Testimony of VE (Tr. 119-24)

The ALJ asked the VE whether a hypothetical individual with the same education, vocational background, and residual functional capacity ("RFC") as Plaintiff could perform Plaintiff's past relevant work or any other jobs that exist in significant numbers on a regional and national level. The VE testified that such an individual could not perform Plaintiff's past relevant work but could perform the jobs of credit checker, document preparer, or eyeglass polisher, which exist in significant numbers in the state of Missouri and the national economy.

The ALJ proposed a second hypothetical individual the same as the first but with the following additional limitations: he would have to alternate between sitting and

7

standing at least every 15 minutes, need to recline for four out of eight hours a day, and would be absent from work at least once a month. The VE testified that, for such an individual, work would be precluded.

Plaintiff's attorney offered a third hypothetical in his questioning of the VE. Plaintiff's attorney asked the VE to consider the ALJ's first hypothetical individual and add only one additional limitation: that he would have to alternate between sitting and standing every 15 minutes. The VE testified that such an individual would be precluded from working.

**ALJ's Decision of October 29, 2013** (Tr. 40-59)

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 23, 2011, the alleged disability onset date. The ALJ found that Plaintiff had the severe impairments of obesity, degenerative disc disease of the cervical spine, and degenerative joint disease of the lumbar spine, but that no impairment or combination of impairments met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

After considering the entire record, the ALJ then found that Plaintiff had the RFC to perform sedentary work as defined in the Commissioner's regulations, in that he could lift and carry 20 pounds occasionally and 10 pounds frequently, he could walk or stand for two hours in an eight-hour workday, and he could sit for approximately six hours in an eight-hour workday. The ALJ found that Plaintiff could occasionally climb stairs, but he could not climb ladders, ropes, or scaffolds, and that he could frequently balance, but could only stoop, crouch, kneel, or crawl occasionally. Finally, the ALJ found that

8

secondary to reported chronic pain, Plaintiff was limited to jobs that do not demand attention to details or complicated job tasks or instructions.

The ALJ relied on the VE's testimony that an individual with Plaintiff's RFC and vocational factors could perform certain jobs that existed in substantial numbers in the national economy, such as credit checker, document preparer, and eye glass polisher. Thus, the ALJ found that Plaintiff was not disabled as defined by the Act.

In making his findings with respect to Plaintiff's RFC assessment, the ALJ determined that Plaintiff's allegations of disability were not "fully credible" and did not warrant additional limitations beyond those established in the RFC outlined earlier. Considering the requirements of 20 C.F.R. §§ 404.1529 and 416.929, the ALJ found that, despite Plaintiff's significant treatment history prior to his December 23, 2011 alleged disability onset date, his relative lack of treatment after the onset date was inconsistent with his allegations of disabling pain and limitations. In particular, the ALJ noted that Plaintiff reported he was doing well and pleased with his progress in August 2011; that Plaintiff thereafter had large gaps in his treatment by Dr. Fonn; and that Plaintiff did not attend physical therapy as prescribed by Dr. Fonn.

In addition to Plaintiff's conservative treatment history after his alleged disability onset date, the ALJ considered objective medical findings during the relevant period and found them to be inconsistent with Plaintiff's subjective complaints of pain. The ALJ cited evidence that Plaintiff displayed a normal gait despite a tender lower back between November 2011 and August 2012, and noted that Plaintiff's lower back was non-tender in November 2012. The ALJ also noted that Plaintiff's medical records showed he

9

displayed a normal gait and only occasionally tender lower back through 2013, and that Dr. Fonn reported Plaintiff to have essentially normal physical examinations in March and August of 2013. Thus, the ALJ concluded that the clinical signs and medical findings during the relevant period were minimal and inconsistent with disabling pain.

Next, the ALJ considered Plaintiff's activities of daily living and concluded that these, too, were inconsistent with his allegations of disabling pain. The ALJ cited evidence that Plaintiff ran errands, cooked, performed personal care and household chores, cared for his dog, shopped each week for two hours, drove 70 miles to the hearing, fished or hunted once a week for three to four hours at a time, rode four-wheelers, occasionally attended church, and continued to play nine holes of golf each month.

Finally, the ALJ noted that the record contained evidence of symptom exaggeration in the form of the functional capacity examination in November 2012, in which Plaintiff failed two out of eight validity criteria, indicating possible hypochondriasis.

The ALJ also gave "little weight" to Dr. Fonn's opinion in his medical source statement with respect to Plaintiff's need to be able to shift positions at will, to sometimes take unscheduled breaks, and to likely be absent from work about once a month. The ALJ found that Dr. Fonn's opinion in these respects was not consistent with Plaintiff's conservative treatment history during the relative period, the objective medical evidence during the relevant period, and Plaintiff's activities of daily living as set out above. The ALJ also noted that Dr. Fonn's opinion was based on Plaintiff's functional capacity

10

examination, which as discussed above was of "questionable validity" in light of Plaintiff's failing two validity criteria.

## DISCUSSION

**Standard of Review and Statutory Framework**

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). A court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the

Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

**Subjective Complaints**

Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility with respect to the severity of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In *Polaski v. Heckler*, 739 F.2d 1320, 1332 (8th Cir. 1984), the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." The ALJ must also examine "the claimant's prior work record and observations of third parties and physicians relating

to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007) (citation omitted).

"If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to [his] judgment even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

In this case, "[a]lthough the ALJ never expressly cited *Polaski* (which is [the Eighth Circuit's] preferred practice), the ALJ cited and conducted an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929, which largely mirror the *Polaski* factors." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). The ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's subjective complaints of disabling pain. These included Plaintiff's: (1) conservative treatment history after the alleged disability onset date, including his failure to follow prescribed courses of physical therapy, (2) recent medical records indicating normal gait, occasionally tender lower back, and normal physical examinations, (3) wide range of daily activities, including hunting or fishing once a week, and (4) evidence of symptom exaggeration in the functional capacity report. These inconsistencies constitute good reasons for discrediting Plaintiff's subjective complaints. *See Julin v. Colvin*, No. 15-1280, 2016 WL 3457265, at *3 (8th Cir. Oct. 20, 2015) (finding that the plaintiff's failure to follow a prescribed course of treatment supported the ALJ's decision to discredit his subjective complaints); *Johnson v. Colvin*, No. 1:14CV28 TIA, 2015 WL 249369, at *11 (E.D. Mo. Jan. 20, 2015) (holding that

infrequent treatment during the relevant period is a basis for discounting subjective complaints); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (holding that an ALJ may consider a claimant's unresponsive or exaggerated responses during a medical examination).

In his social security brief, Plaintiff correctly notes that the ALJ did not discuss Plaintiff's work history, but as discussed above, the ALJ need not "explicitly discuss each *Polaski* factor in a methodical fashion." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) .

Plaintiff also asserts that the reason he did not seek more treatment or follow all prescribed treatment was because he could not afford it; that his daily activities were "more nuanced than acknowledged by the ALJ" and not necessarily inconsistent with his allegations of pain; and that despite failing two out of eight validity criteria in the functional capacity evaluation, he was found to have given good effort during the evaluation, which weighed against a finding of symptom exaggeration.

The Court acknowledges that there may be substantial evidence in the record that would support both the ALJ's conclusion that Plaintiff was not credible, and Plaintiff's arguments to the contrary.[4] However, the ALJ was able to observe Plaintiff during his

---

[4] With respect to Plaintiff's alleged financial constraints, there was no indication in the record that Plaintiff was refused physical therapy or other prescribed treatment based on ability to pay or that he attempted to seek alternative payment methods to complete the prescribed treatment. *See Clark v. Shalala*, 28 F.3d 828, 831 n.4 (8th Cir. 1994)

testimony at the hearing and this, in addition to the reasons cited above, convinced the ALJ that Plaintiff was not fully credible and could perform sedentary work with some limitations. The ALJ is in the best position to make this determination, *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002), and the Court cannot say that the ALJ erred in doing so.

**Opinion of Plaintiff's Treating Physician**

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Samons v. Astrue*, 497 F.3d 813, 817–18 (8th Cir. 2007). Even if the opinion is not given controlling weight, it may be entitled to substantial weight. *Id.* "However, an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). "Ultimately, the ALJ must give good reasons to explain the weight given the treating physician's opinion." *Id.* (citation omitted).

Here, the ALJ articulated good reasons, supported by substantial evidence in the record, for giving little weight to Dr. Fonn's opinion with respect to Plaintiff's need to be

---

(finding lack of medical treatment was a valid reason, among other reasons, to discount subjective pain because even though plaintiff lacked financial resources, she offered no testimony that she had been denied further treatment or access to prescription pain medication on account of financial constraints).

able to shift positions at will, to sometimes take unscheduled breaks, and to likely be absent from work once a month. These limitations were not consistent with Plaintiff's conservative treatment history during the relative period, objective medical evidence during the relevant period, and Plaintiff's daily activities and hobbies, as discussed above. *See id.* (finding that an ALJ properly discounted the opinion of a treating neurologist where the opinion consisted of a conclusory checkbox form, listed significant limitations that were not reflected in treatment notes or other medical records, and assigned more physical limitations than the plaintiff exhibited in daily living). And as the ALJ noted, Dr. Fonn's opinion was based on a functional capacity evaluation that indicated Plaintiff may have been exaggerating his symptoms.

In addition, the Court agrees with Defendant's assertion in its response brief that some of the ALJ's RFC limitations are actually more limiting than those listed in Dr. Fonn's opinion, including with respect to Plaintiff's lifting capacity and ability to sit, stand, and climb. And Dr. Fonn's opinion itself indicated that he had "not tested" whether Plaintiff was capable of sustaining a 40-hour workweek, that it was "unknown" how often Plaintiff would need to take breaks or for how long, and that Plaintiff's need to be absent from work once a month was "subject to change." An "ALJ is not required to rely entirely on a particular physician's opinion" in formulating the RFC. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citation omitted). Here, the ALJ properly made the RFC determination based on the record as a whole, and substantial evidence supports the ALJ's decision.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of August, 2016.